514 P.2d 1290

Robert SCHOCKER, Plaintiff and Respondent,

v.

MILTON O. BITNER COMPANY, a Utah corporation, Defendant and Appellant.

No. 13240.

Supreme Court of Utah.

Oct. 17, 1973.

sisting of approximately 10,000 acres of land including Section 31 which was near the center thereof. The ranch was about to be lost through foreclosure proceedings, and appellant was desperately trying to raise $40,000 to prevent the foreclosure proceeding. At a prior time it had sold to Schocker, hereinafter called respondent, and one Spratling 100 acres of the land for a price of $5,000. It had several prospective purchasers and hoped to sell the entire ranch to one of those prospects.

This appeal involves the interpretation of a document which was prepared by and in the office of Spratling, a lawyer, during a meeting of all interested parties. Spratling had represented the Bitners (officers of appellant) in prior legal matters, and they claim that they thought that he was representing them in their effort to save the ranch. He denied any representation, and the evidence does not show that he was ever paid any fee for any such services. The document, hereafter called agreement, was as follows:

Royal K. Hunt, Raymond A. Hintze, Salt Lake City, for defendant and appellant.

Duane B. Welling, Moffat, Welling, Paulsen & Burningham, Salt Lake City, for plaintiff and respondent.

ELLETT, Justice:

Milton O. Bitner Company, hereinafter called appellant, owned a large ranch con-

Please be advised it is our understanding for loaning of various funds to Milton O. Bitner Company, prior to January 1, 1970, that we will guarantee you, individually and severally, that any and all acreage which must be purchased by you for completion of a package sale of properties in Summit and Morgan Counties, may be purchased from us up to January 1, 1971, at the rate of $100.00

per acre on said property belonging to Schocker and Spratling, regardless of what the cost may actually have been to Schocker, for cash only.

This is a convenience for the Corporation in allowing Milton O. Bitner Company to try and meet its obligations as they fall due on mortgages and other pressing matters so that we may try and complete a sale and I realize there is a risk involved and, therefore, guarantee to you that you would be reimbursed this amount if the purchase is made. This is not necessarily an offer by Milton O. Bitner nor must it be purchased on January 1, 1971, but only as indicated if, for a package purpose, the property must be purchased by Milton O. Bitner, it is so offered by Schocker.

Be it understood, in addition, that for $40,000.00 to be advanced in acreage of Section 31 for Idaho Trailer Finance Company mortgage purchase and other mortgage payments, costs, etc., that Milton O. Bitner Company will be given the right to repurchase up to September 30, 1970, for the amount of $60,000.00 for a package purchase sale.

All parties argee that it is ambiguous, and evidence was given to show what the true understanding of the parties was.

Spratling had reconveyed his half interest in Section 31 to appellant and had been paid $30,000 for doing so. Appellant tendered respondent $30,000, but respondent refused to reconvey, claiming that the deed conveyed the land to him as a purchaser and that he was obligated to reconvey only if appellant needed the section in order to complete a sale of the entire ranch and that there was no sale for the ranch with or without Section 31.

Appellant contends that it only borrowed $40,000, and to hide the usury provision it gave a warranty deed with the understanding that if it paid $60,000, the land would be returned, and it did not know what was meant by the phrase "package purchase sale."

The evidence which the court received would justify the finding and judgment made to the effect that Schocker owned a one-half interest in Section 31 and need not reconvey it. However, the court sustained an objection to the introduction in evidence of a letter dated April 7, 1971, written by Spratling and sent to appellant with a copy to respondent which among other things contained the following language:

Please be advised that the Idaho Trailer Mortgage was paid off on assignment basis on March 6, 1970 by Robert Schocker and Ronald N. Spratling, Jr. The assignment was taken of this mortgage from Idaho Trailer Finance Company upon the presentation of the payment and said mortgage is being held for

security purposes for any and all monies which have been advanced by Spratling-Schocker which total at this time approximately $40,000.00. This mortgage is held as security for repayment of said monies of the $40,000.00 and in addition thereto any and all additional amounts which may be advanced. . . .

&ast; &ast; &ast; &ast; &ast; &ast;

It should also be noted that the acreage conveyed on March 6, 1970 in Section 30 to Schocker-Spratling will be conveyed back at request of Bitner Company upon payment as agreed upon between the parties.

&ast; &ast; &ast; &ast; &ast; &ast;

In sustaining the objection to the introduction of the letter, the trial court was of the opinion that since it had not been proved that Spratling was the attorney for Schocker [1] and Spratling was not a party to the proceeding, the letter was not binding on Schocker and was thus not admissible.

We think it was not necessary to prove the relation of attorney and client between Spratling and respondent in order to make the letter admissible. Spratling was a party to the agreement standing in the same posture as respondent. He was the author of the language contained in the agreement, which language he claimed was finally agreed upon after much discussion in his office. If anyone knew what the actual agreement of the parties was and what the language meant, it certainly was Spratling. Besides, Spratling had testified for respondent and to the effect that the agreement was as claimed by respondent. This proffered letter would seem to be admissible as a possible impeachment of the testimony which he had given. The letter throws some light on what he as a co-purchaser with respondent thought the agreement was just 33 days after it was signed.

Had the court received the letter in evidence and considered it in determining what the original agreement was, he might have come to a different conclusion than that which he found from the evidence before him.

We think the court committed prejudicial error in refusing to admit the letter in evidence, and as a consequence the judgment must be and it is hereby reversed. The case is remanded for a new trial. Costs are awarded to the appellant.

CALLISTER, C. J., and HENRIOD, CROCKETT and TUCKETT, JJ., concur.

---

1. Schocker and Spratling jointly obtained the deed and jointly raised the $40,000 to pay for it. Schocker testified that since Spratling was knowledgeable in such matters and was looking out for his own interest, he thought that Spratling would look out for that of Schocker.